UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| EARTON SMITH | * | CIVIL ACTION NO.  12-1771 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| WARDEN, LOUISIANA STATE PENITENTIARY | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

*Pro se* Petitioner Earton Smith filed his petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on June 26, 2012 and an amended petition on October 3, 2012.  [docs. # 1, 10]. Respondent filed several incomplete responses before properly responding to the petition on February 4, 2013.  [docs. # 15, 19, 22, 28].  Petitioner filed a Reply brief on February 11, 2013, and a Supplemental and Amended Response on May 21, 2013.  [doc. # 29, 39].  Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction and sentence for aggravated burglary and possession of a firearm by a convicted felon.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

### BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> The defendant and Carisa Coleman began a romantic relationship in October 2005. Ms. Coleman testified that the relationship ended in April 2006 because the defendant was "very jealous and demanding." In July 2006, Ms. Coleman moved from her residence in Shreveport, Louisiana to her brother's home on Edwards Street

1

in Bossier City; she did not advise the defendant of her new address.

Ms. Coleman testified that on the evening of July 29, 2006, she was at her Edwards Street home when she heard a knock at the door. As she unlocked the door, the defendant pushed his way inside. Ms. Coleman stated that once the defendant gained entry, he grabbed her by her neck, pushed her into a bedroom, pushed her onto the bed and began slapping her and calling her a "bitch." Ms. Coleman testified that the defendant told her that "if he can't have me, can't nobody have me." Ms. Coleman's face was seriously bruised in the attack.

Hearing the commotion, Ms. Coleman's sister-in-law, Tamekia Kennedy, entered the room and ordered the defendant to leave. The defendant pulled a silver and black handgun from his shirt, held it to Ms. Coleman's head and threatened to kill her. Ms. Kennedy ran from the room and called the Bossier City Police Department ("BCPD").

Police officers responded quickly, and when the defendant heard the police sirens, he forced Ms. Coleman into the kitchen and then released her. Ms. Coleman ran out of the front of the house as the defendant ran out of the back door.

Officer John Morton of the BCPD was the first officer to arrive at the scene. Officer Morton testified that he spoke briefly to Ms. Coleman, who informed him that the defendant had run out of the back door and was armed with a handgun. Officer Morton stated that he ran to the back of the house and saw the defendant running through the back yard. He testified that he saw the butt of a handgun in the defendant's hand, so he drew his own weapon, identified himself as a police officer and ordered the defendant to stop. The defendant kept running but turned and looked over his shoulder at the officer. Officer Morton testified that the defendant did not aim the gun in his direction; rather, the defendant leaped over a chain link fence and was not apprehended that night. Officer Morton testified that he clearly saw the suspect's face and identified the defendant as the suspect in open court.

The defendant was arrested at a later date. It was later discovered that the defendant was a convicted felon with a prior conviction for, among other things, armed robbery. Consequently, the defendant was charged with aggravated burglary and possession of a firearm by a convicted felon.

The trial commenced on November 26, 2007. The trial began with the defendant acting as his own counsel during the beginning of voir dire. Before allowing the defendant to proceed, the court engaged the defendant in a lengthy dialogue with regard to the dangers of self-representation. The court appointed an attorney to assist the defendant and explained to the defendant the voir dire process in detail. After conducting a portion of voir dire himself, the defendant asked that his attorney complete the jury selection process. The court informed the defendant that he could either be represented by counsel or he could represent himself. The defendant initially

2

opted to continue to represent himself. However, as jury selection continued, the
defendant chose to allow his appointed attorney to represent him for the remainder
of the trial.

*State v. Smith*, 7 So. 3d 855, 856-57 (La.App. 2 Cir. 2009).

Petitioner was found guilty of aggravated burglary and possession of a firearm by a
convicted felon and, on March 25, 2008, was sentenced to thirty years at hard labor on the
aggravated burglary conviction and five years at hard labor on the possession of a firearm by a
convicted felon conviction, both sentences to run concurrently.  [doc. # 19-1, P. 372][1].  On appeal
to the Second Circuit Court of Appeal, the state appellate court affirmed Petitioner's convictions
and the sentence imposed for aggravated burglary; however, the court vacated Petitioner's
sentence for possession of a firearm by a convicted felon and remanded the matter to the trial
court for re-sentencing.  *Smith*, 7 So. 3d at 855; *see also* [doc. # 19-1, P. 389].  On remand,
Petitioner was adjudicated a third felony offender and, on November 6, 2009, was sentenced to
serve life imprisonment at hard labor. [doc. # 19-2, P. 834].  Shortly thereafter, Petitioner filed a
writ application in the Louisiana Supreme Court, which was denied on January 29, 2010.  *See*
*State v. Smith*, 25 So. 3d 828 (La. 2010).

On November 13, 2009, Petitioner filed a *pro se* application for Post-Conviction Relief
("PCR") in which he asserted three claims for relief, and, on December 29, 2009, the 26th
Judicial District Court of Bossier Parish dismissed Petitioner's application because it received
notice that pleadings were filed with the Louisiana Supreme Court.  [doc. # 19-2, P. 825].
Thereafter, on January 26, 2011, Petitioner filed a second PCR application, asserting fourteen
claims for relief.  *Id.*  The state trial court denied claims 1, 2, 3, 8, 9, 10, 11, 12, 13, and 14
pursuant to La. C.Cr.P. Arts. 928 and 930.3 for failure to allege a claim which would entitle

---

[1] The bate stamp numbers in the state court record are inconsistent; therefore, the record
will be cited by referencing the CM/ECF electronic stamp.

3

Petitioner to relief.  [doc. # 1-4, P. 57].  The court denied claims 5 and 6 as having been previously addressed and ruled on by the state appellate court.  *Id.*  However, the court did find that if claims 4 and 7 were established, then Petitioner would be entitled to relief.  *Id.* at 58.  Accordingly, the court ordered Respondent to file a response to claims 4 and 7 – which it timely did [doc. # 1-5, P. 11] – and, ultimately on April 20, 2011, the trial court dismissed the claims on their merits. [doc. # 1-4, P. 69].  The trial court's decision was affirmed by both the Second Circuit Court of Appeals and the Louisiana Supreme Court.  [doc. # 1-5, P. 61-62].

On April 25, 2012, Petitioner filed a third PCR application setting forth one claim for relief.  [doc. # 19-2, P. 826].  The state trial court denied Petitioner's third PCR application as untimely on May 29, 2012.  *Id.* at 827.  On August 16, 2012, the state appellate court found that "[b]ecause Smith's sentence did not become final until March 4, 2011, his application [was] not untimely," and accordingly remanded the matter to the trial court to consider the merits of Petitioner's application.  *Id.* at 830. On remand, the state trial court held a hearing on October 16, 2012, and subsequently denied Petitioner's claims on December 21, 2012.  [doc. # 28, P. 66].  Based on the record provided to the Court, it is unclear if Petitioner subsequently appealed to the state appellate court.

Petitioner filed the instant petition on June 26, 2012, raising the fourteen claims originally presented in his second PCR application.  *See* [doc. # 1-2].  Specifically, Petitioner argues the following:

1.   The bill of information charging aggravated burglary is insufficient because it failed to allege two of three essential elements of the criminal offense;

2.   The trial judge "constructively amended the bill of information instruct[ing] the jury . . . in order to convict defendant of aggravated burglary;"

3.   Trial court improperly admitted inculpatory statements into evidence at trial;

4.   Ineffective assistance of counsel;

4

5.      Prosecutorial misconduct;

6.      Trial judge failed to "completely satisfy himself on the record that Petitioner was competent to represent himself;

7.      Violation of the confrontation clause;

8.      Bossier Police Officer Matthew Hannah conspired to and made false statements on the record;

9.      Bossier Police task force Officer Richard McGee conspired to and made false statements on the record;

10.     Bossier Police Officer John E. Morton conspired to and made false statements on the record;

11.     Bossier Police Sergeant Richard Nunnery committed "malfeasance in office [by] tampering with evidence;"

12.     Bossier Police Office Kevin Humphrey intimidated witnesses;

13.     Bossier Police Detective George Kalmbach committed "malfeasance in office [by] tampering with evidence;"

14.     Bossier City Police Detective Shane McWilliams conspired to and made false statements on the record.

[doc. # 1-2, P. 7, 10, 13, 17, 28, 38, 49]; [doc. # 1-3, P. 1, 7, 11, 19; 23].

Thereafter, on March 14, 2013, Petitioner filed an amended petition adding two claims originally raised on direct appeal: (1) charges against Petitioner constitute double jeopardy; and, (2) the trial court erred in denying Petitioner's motion for a mistrial.  [doc. # 10, P. 5].

The matter is now before the undersigned.

## LAW AND ANALYSIS

### I.      Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, ⸺ U.S. ⸺, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).  On collateral review, the state court denied claims 1, 2, 3, 5, 6 8, 9, 10, 11, 12, 13, and 14 without addressing the merits relying on La. C.Cr.P. Arts. 928 and 930.3 which state as follows:

> The application may be dismissed without an answer if the application fails to allege a claim which, if established, would entitle the petitioner to relief.

6

La. C.Cr.P. Art. 928.

> If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:
>
> > (1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;
> >
> > (2) The court exceeded its jurisdiction;
> >
> > (3) The conviction or sentence subjected him to double jeopardy;
> >
> > (4)  The limitations on the institution of prosecution had expired;
> >
> > (5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or
> >
> > (6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.
> >
> > (7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

La. C.Cr.P. Art. 930.3.

The Louisiana courts' decision to bar such claims is within their authority and prerogative, and it is not within the Court's province to disagree with the application of the bar; it is only to determine its adequacy.  *Evans v. Cain*, 2012 U.S. Dist. LEXIS 91102 (E.D. La. Mar. 13, 2012); *Lee v. Cain*, 2004 U.S. Dist. LEXIS 25763, at *1 n.2 (E.D. La. Dec. 6, 2004).  It is well established that La. Code Crim. P. Arts. 928 and 930.3 are independent and adequate state grounds for dismissal which bars review by the federal courts in a *habeas corpus* proceeding in certain cases.  *See, e.g., Neal v. Kaylo*, No. 01-2211, 2001 U.S. Dist. LEXIS 16608 (E.D. La. Oct. 10, 2001) (Art. 930.3 and *State ex rel. Melinie* are independent and adequate).  However, to be "adequate" within the meaning of this doctrine, the state procedural rule must be strictly or regularly followed and evenhandedly applied to claims "identical or similar" to the petitioner's

claim. *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).  The state court judge clearly indicates that he is relying solely on articles 928 and 930.3.  *See* [doc. # 1-4, P. 57].  Thus it is an independent ground.  However, it appears that the Louisiana state courts have only regularly followed and evenhandedly applied the 930.3 procedural bar to bar review of an applicant's sentencing claims and errors occurring in multiple offender proceedings which are raised in post-conviction applications.  *See State ex rel Brown v. State*, 870 So.2d 976 (La.2004).[2]  Since Petitioner's claims do not involve multiple offender adjudication or assert sentencing errors, and since the parties have not shown that the procedural bar has been regularly and evenhandedly applied to claims similar to those raised by petitioner, the undersigned will address the underlying merits of Petitioner's claims in accordance with the tenets of § 2254.

## II.    Petitioner's Claims

### A.    Claim One: Bill of information is insufficient

Petitioner alleges that he was "deprive[d] due process[,] and his Fifth [and] Sixth Amendment rights violated where the Bill of information charging violation of LSA-R.S. 14:60 aggravated burglary insufficient because [it] failed to allege 2 of 3 essential elements of [the] crim[inal] offense."  [doc. # 1, P. 7].

Under federal law, the sufficiency of a state indictment or Bill of Information is not a matter for federal *habeas corpus* relief unless it can be shown that the charging instrument was "so defective that the convicting court had no jurisdiction."  *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985), in turn

---

[2] *See also State ex rel Brazley v. State*, 925 So. 2d 1220, 2006 WL 1097828 (La.3/24/06); *State v. Shepard*, 917 So.2d 1086 (La.2005); *State v. Hebreard*, 708 So.2d 1291, 1292 (La.App. 4th Cir.1998); *State ex rel. Williams v. State*, 925 So. 2d 1222, 2006 WL 1097841 (La.3/24/06); *State ex rel Pierce v. State*, 925 So. 2d 532, 2006 WL 1049975 (La.3/17/06); *State ex rel Pollock v. State*, 924 So.2d 177 (La.2/10/06); *State ex rel State v. Cowart*, 924 So.2d 159 (La.2/10/06).

citing *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984)); *Dowell v. C.M. Lensing*, 805 F.Supp. 1335, 1342–43 (M.D.La. 1992).  For a charging instrument to be fatally defective, no circumstances can exist under which a valid conviction could result from facts provable under the instrument.  State law is the reference for determining sufficiency.  *Morlett*, *supra*, citing *Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir. 1983), *see also McKay v. Collins*, 12 F.3d 66, 68–69 (5th Cir. 1994).  Article 384 of the Louisiana Code of Criminal Procedure provides: "An Information is a written accusation of crime made by the District Attorney and signed by him. It must be filed in open court in a court having jurisdiction to try the offense, or in the office of the clerk thereof."

Petitioner fails to demonstrate or even allege that the charging instrument was so defective that the trial court had no jurisdiction.  Petitioner merely alleges that the Bill of Information failed to "state the unauthorized entry" element of the crime.  [doc. # 1-2, P. 10]. However, the Supreme Court has held that an indictment or Bill of Information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy.  *United States v. Debrow*, 346 U.S. 374 (1953).  Here, the District Attorney's Office filed a Bill of Information charging Petitioner with aggravated burglary on October 5, 2006.  *See* [doc. # 1-5, P. 8].  The Bill of Information properly informed Petitioner of the offense charged and furthermore identified the victim of the offense.  Specifically, it states:

> I, the undersigned Assistant District Attorney of the Twenty-Sixth Judicial district
> of the State of Louisiana, declare that

> EARTON LYNN SMITH

> on or about the 29th day of JULY 2006, in the Parish, State and District aforesaid,

**DID COMMIT AGGRAVATED BURGLARY OF AN INHABITED DWELLING, BELONGING TO CARISA COLEMAN ARMED WITH A DANGEROUS WEAPON, CONTRARY TO LRS 14:60,**

contrary to the laws of the State of Louisiana and against the peace and dignity of the same.

*Id.* Accordingly, the undersigned finds that Petitioner was sufficiently informed of the accusations against him, and therefore, his claim should be **DENIED**.

    B.    <u>Claim Two: Erroneous jury charge</u>

    Petitioner claims that he was deprived due process of law and his Fifth Amendment rights to a jury instruction when the trial judge constructively amended the Bill of Information and instructed the jury. [doc. # 1-2, P. 10]. Specifically, Petitioner argues that the trial judge erred when he instructed the jury that,

> . . . in order to convict the defendant of Aggravated Burglary, you must find: (1) that the defendant entered Carisa Coleman and Tamekia Kennedy's place of residence, and (2) that the defendant was not authorized to enter Carisa Coleman and Tamekia Kennedy's place of residence; and (3) that the place entered was an inhabited dwelling and persons were present at the time of the entry; and (4) that the defendant entered with a specific intent to commit a felony namely, Aggravated Battery, [i]n Carisa Coleman and Tamekia Kennedy's place of residence; (5) that the defendant committed battery upon Carisa Coleman while in the place, or while entering or leaving the place, or that the defendant was armed with a dangerous weapon when he entered the place or armed himself with a dangerous weapon after entering the place.

[doc. # 19-4, P. 457].

    It is well settled that improper jury instructions in state criminal trials do not generally provide a basis for federal *habeas* relief. *Estelle v. McGuire*, 502 U.S. 62 (1991). In order for an erroneous jury instruction by a state court to warrant federal *habeas* relief, the petitioner must show not only that the instruction given was erroneous, but also that it resulted in prejudice of a magnitude so severe that his due process right was violated. *Cupp v. Naughten*, 414 U.S. 141

(1973); *Sullivan v. Blackburn*, 804 F.2d 885 (5th Cir. 1986).  The Fifth Circuit determined that prejudice has been interpreted in the precise context of a jury charge issue to mean "showing not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Skelton v. Whitley*, 950 F.2d 1037, 1046 (5th Cir. 1992) (citing *United States v. Frady*, 456 U.S. 152, 171 (1982)).

Petitioner merely argues "plain error" when the trial judge erroneously "constructively amended" the jury instruction.  However, he fails to argue that the instruction in question rendered the entire trial fundamentally unfair, and therefore caused a violation of his constitutional rights.  Moreover, the trial judge correctly charged the jury as to the statutory definition of aggravated burglary. *Compare* La. R.S. 14:60, *with*  [doc. # 19-4, P. 457].  Accordingly, the undersigned can find no basis for holding that the trial court's instruction was constitutionally deficient; therefore, Petitioner's claim should be **DENIED**.

C.    Claim Three: Improperly admitted statements at trial

Petitioner claims a violation of his  "Fourteenth Amendment right to suppression of evidence to use police report which was contradictory to the state's witnesses's trial testimony when the state and trial court improperly admitted inculpatory statements into evidence at trial." [doc. # 1-2, P. 13].  Specifically, Petitioner is referring to the "inculpatory statements" of Officer John E. Morton, Carisa Coleman, and Tamekia Kennedy, which –  Petitioner alleges – contradict the officer's written narrative and other statements found in a police report.  [doc. # 1-2, P. 14-15].

The admissibility of evidence is governed by state law.  *See Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991) (citing *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986)).  As the

Supreme Court has repeatedly held, "federal *habeas corpus* relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").  Therefore, an alleged violation of state law, in and of itself, does not merit federal *habeas corpus* relief.  As explained by the Fifth Circuit, federal courts "'do not sit as a "super" state supreme court' in [a *habeas corpus*] proceeding to review errors under state law." *Dickerson*, 932 F.2d at 1145 (*quoting Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir.1970)); *accord Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir.1979) (quoting *Martin*).  A federal court will only grant *habeas corpus* relief based on state court's erroneous evidentiary ruling if it results in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause.  *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (quoting *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)).  Therefore, "[t]he erroneous admission of prejudicial evidence will justify *habeas* relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Id.*  Moreover, as the Supreme Court recently explained, "the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." *Perry v. New Hampshire*, ⸺ U.S. ⸺, ⸺, 132 S.Ct. 716, 728, 181 L.Ed.2d 694 (2012) (citing *Kansas v. Ventris*, 556 U.S. 586, 594 (2009); *Dowling v. United States*, 493 U.S. 342, 353 (1990)).

In this case, having failed to show that the introduction of Carisa Coleman, Tamekia Kennedy, and Officer Morton's testimony violated any state court evidentiary rule, Petitioner is unable to establish error, much less that any error was so prejudicial as to result in a denial of a constitutionally fair proceeding.  Accordingly, Petitioner's claim on this basis should be **DENIED**.

D.      Claim Four: Ineffective assistance of counsel

Petitioner asserts a claim of ineffective assistance of counsel, and sets forth a number of allegations against his court-appointed trial counsel. [doc. # 1-2, P. 17].  Petitioner initially chose to represent himself at trial, with the court designating counsel to advise him during the course thereof.  However, on the second day of jury selection, Petitioner decided to allow his advisory counsel to represent him.

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the

13

ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

The state court addressed this claim on its merits and found that "Petitioner has not shown how his counsel's performance was deficient or in what way his counsel's actions were prejudicial to him . . . [and] it is improper for Petitioner to claim ineffective assistance of counsel in a case where Petitioner represented himself up until the date of trial and, as shown in the record, continually refused Mr. Prudhomme's assistance and interjected during the proceedings." [doc. # 1-4, P. 74].

The undersigned cannot find that the state trial court's determinations were unreasonable in light of the incomplete and conclusory nature of Petitioner's arguments.  As stated *supra*, Petitioner elected to represent himself up until the date of trial and therefore he "cannot later complain that the management of his own defense amounted to ineffective assistance of

14

counsel." *United States v. Brown*, 591 F.2d 307, 311-12 (5th Cir. 1978); *see also* Faretta v. California*, 422 U.S. 806, 834 (1975) ("It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'") (citation omitted).  Moreover, Petitioner is unable to establish that defense counsel's performance was deficient or prejudiced his case in any specific way.  Petitioner's claim for relief on the basis of ineffective assistance of counsel should be **DENIED.**

      E.    <u>Claim Five: Prosecutorial misconduct and confrontation clause</u>

Petitioner claims that the prosecutor engaged in prosecutorial misconduct when he failed to disclose to the trial court "his previous appointment as defense counsel for Petitioner" in a prior criminal case. [doc. # 1-2, P. 28].   Additionally, Petitioner alleges that the prosecution was obligated to produce Detective Kevin Humphrey for "cross examination" and that the failure of the prosecution to call Detective Humphrey as a trial witness was a violation of petitioner's right of confrontation.  *Id.* at 30.

Prosecutorial misconduct does not warrant federal *habeas corpus* relief unless it so infects the trial with unfairness as to deny the petitioner due process.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  The petitioner must demonstrate that "the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper" conduct.  *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).

Here, Petitioner merely argues that the prosecutor previously represented him in an unrelated criminal proceeding; however, he fails to articulate how this "so infect[ed his] trial with unfairness as to deny . . . due process."  Petitioner was clearly aware of the prior

representation at the time of his trial, and could easily have informed the court of this fact himself.  Moreover, the undersigned cannot conclude that the evidence presented at trial was "so insubstantial that but for the [prosecutor's alleged misconduct] no conviction would have occurred."  Accordingly, Petitioner's claim on this basis should be **DENIED**.

Petitioner also argues violations of the confrontation clause for failure of the prosecution to produce Detective Kevin Humphrey for "cross examination." [doc. # 1-2, P. 30].  A petitioner's confrontation right is only implicated when an out-of-court statement is used to prove the truth of the matter asserted.  *Tennessee v. Street*, 471 U.S. 409, 414 (1985).  Moreover, the Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant.  *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. Okla. 1985). In *Cooper v. California*, the United States Supreme Court found that a criminal defendant is not deprived of his right to confrontation when the prosecution does not call a witness to testify against him. 386 U.S. 58, 62, fn. 2 (1967).  Consequently, Petitioner's confrontation clause claim is baseless, and his claim for relief on this ground should also be **DENIED**.

F.    Claim Six: Competency to represent himself

Petitioner claims that the trial judge failed to "completely satisfy himself on the record that Petitioner was competent to represent himself . . ."  [doc. # 1-2, P. 36].  Additionally, Petitioner argues that the trial judge erred by failing "to render judgment on a timely motion for new trial prior to sentencing."  *Id.*

A criminal defendant has the constitutional right to waive his right to counsel and present his own defense.  *Faretta*, 422 U.S. at 817-22; *United States v. Long*, 597 F.3d 720 (5th Cir. 2010).  Waiver of that right must be knowing and intelligent, and the defendant must clearly and unequivocally request self-representation.  *Long*, 597 F.3d at 723.  Once a defendant unequivocally invokes the right of self-representation, whether expressly or constructively, the

16

court must hold a *Faretta* hearing to ensure that the defendant's request to proceed without counsel is knowing and voluntary. *See Faretta*, 422 U.S. at 835-36; *United States v. Cano*, 519 F.3d 512, 516 (2008). A *Faretta* warning is required if the defendant, either expressly or constructively, unequivocally invokes his right to proceed *pro se* and waives his right to counsel. *See Cano*, 519 F.3d at 516; *see also Long*, 597 F.3d at 724.

The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 2004). The trial court need only be convinced that "he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984). The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

The trial judge may look at the particular facts and circumstances of a case, "including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding," to determine whether a defendant made a knowing and intelligent waiver of counsel. *Tovar*, 541 U.S. at 88. Furthermore, although a defendant possesses both the right to counsel and the right to self-representation, there is no constitutional right to have both through a "hybrid representation" scheme, such as standby counsel. *See McKaskle*, 465 U.S. at 182.

Petitioner's challenge in this federal *habeas* case appears premised on the argument that the trial court did not engage in the *Faretta* process to determine whether he made a knowing and voluntary waiver. The state court record is filled with instances in which Petitioner, his appointed counsel and the prosecutor asserted that he had chosen to represent himself. *See, e.g.* [doc. # 19-

3, P. 38-41].  At a hearing held on November 26, 2007, the trial court engaged in a colloquy with

Petitioner to determine if he understood the challenges of proceeding *pro se*:

| | |
|---|---|
| THE COURT: | There's only one man in this whole courtroom that can see it that you don't get a fair trial. You know who that is? |
| MR. SMITH: | Judge Dewey Burchett. |
| THE COURT: | No. No, I'm going to see to it you get a fair trial. There's somebody else in this courtroom that can make sure that you don't get a fair trial. Do you know who it is? |
| MR. SMITH: | No, sir. |
| THE COURT: | It's you. I want you to think about that, because I have certain rules, Mr. Smith, that I have to abide by. |
| MR. SMITH: | Yes, sir. |
| THE COURT: | Okay? You've got another friend in the courtroom, Mr. Prudhomme. Where is Mr. Prudhomme? |

***

| | |
|---|---|
| THE COURT: | Mr. Prudhomme has been engaged to represent you. I know that you don't like Mr. Prudhomme. I know that, but he is trained in the law. Now I had to go to law school, took me seven and a half years to get my law degree. I got my law degree 37 years ago in 1970, and there's not a day that I'm on this job . . . that I don't learn something new about the law because the law is real complicated. My advice to you, you don't have to take it but I want to tell you this because I'm your friend, I'm here to see that you get a fair trial if I can give you one, Mr. Prudhomme, he doesn't have as much experience as I, he doesn't have 40 years experience fooling with the law, but he's got a number of years and he's tried a lot of cases and a lot of them before me. And he's a good lawyer. He establishes a rapport with the jury. The jury likes him. Juries like Mr. Prudhomme. That's what you want. And he'll give you a fair trial if you'll let him. But now if you want to represent yourself, I'm going to let you do that. |
| MR. SMITH: | Yes, sir. |

18

***

| THE COURT: | So what do you want to do? |
|---|---|
| MR. SMITH: | I want to represent myself. |

***

| THE COURT: | I want to get a Code of Evidence. You got a Code of Evidence? |
|---|---|
| MR. SMITH: | I have one. |

***

| THE COURT: | Okay. Have you got a Code of Criminal Procedure? |
|---|---|
| MR. SMITH: | Yes. |

[doc. # 19-3, P. 39-43]. However, on the second day of jury selection, Petitioner elected to be represented by counsel. Therefore, Petitioner only represented himself during the pre-trial period and the first day of voir dire. The record is clear that the trial court was "overwhelmingly" convinced that Petitioner knowingly and intelligently waived his right to counsel and also that he was able to represent himself. This is all that was required to meet constitutional standards regarding the waiver. *See McKaskle*, 465 U.S. at 173. The considerations and warnings by the state trial court over the long course of these proceedings were more than sufficient to satisfy the *Faretta* requirements. *Accord Smith v. Dretke*, No. 05-CV-1229, 2006 U.S. Dist. LEXIS 5424, at *4 (N.D. Tex. July 13, 2006). Thus, the record supports the factual determinations made by the state courts that Petitioner made a free and voluntary waiver of his right to counsel and the clear and unequivocal choice to represent himself for the period of time before he allowed his trial counsel to represent him at trial. Accordingly, Petitioner's claim on this basis is frivolous and should be **DENIED**.

Additionally, Petitioner argues that the trial judge failed to render judgment on his timely

motion for a new trial prior to sentencing.  [doc. # 1-2, P. 36].  A *habeas* petitioner has the burden of proving facts in support of his claim and unsupported conclusory allegations do not warrant *habeas* relief.  *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987); *Wilson v. Butler*, 813 F.2d 664, 671 (5th Cir. 1987); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980).  Petitioner merely argues this argument in conclusory fashion, stating: "The trial court erred not render judgment on a timely motion for a new trial prior to sentencing, and thus, Petitioner is entitled to a new trial [*sic*]." [doc. # 1-2, P. 39].  Petitioner provided no legal or factual support for his claim, and therefore, it should be **DENIED**, as frivolous.

      G.    <u>Claim Seven: Confrontation clause</u>

      Petitioner made this identical claim related to the confrontation clause and Detective Kevin Humphrey in Claim Four above.  Accordingly, Petitioner's claim should be **DENIED** for the reasons stated *supra.*

      H.    <u>Claims Eight through Fourteen: Conspiracy Allegations against Bossier City Police Officers, Detectives, and Sergeants</u>

      In claims eight through fourteen, Petitioner makes a series of conspiracy allegations against Bossier City Police Officers involved in the investigation of his case.  Specifically, Petitioner makes unsupported allegations that several officers falsified police records, made false statements on public documents, engaged in intimidation of witnesses, and tampered with evidence.

      In federal *habeas* actions, improper action by the State does not present a claim of constitutional magnitude unless the "acts were so prejudicial as to render a trial fundamentally unfair in violation of the due process clause."  *Easter v. Estelle*, 609 F.2d 756, 760 (5th Cir. 1980).  To establish such prejudice, "the petitioner must demonstrate either persistent and

pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the [misconduct] no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992).

First, Petitioner has failed to present any meaningful evidence that the State acted improperly. *See Goodwin v. Johnson*, 224 F.3d 450, 456 (5th Cir. 2000) (finding that it is the Petitioner's burden "to produce sufficient facts to support his allegations."). He has not produced any facts that any documents or reports were concealed or altered, or that the officers conspired to conceal or alter any documents or reports relating to the facts of this case. As Respondent properly argues, the State provided "'open file' discovery of its entire case file" and the officers who testified at trial were cross-examined by defense counsel. [doc. # 28, P. 28]. Petitioner could have presented all of these claims and information to the jury when he testified at his trial, and now he attempts to relitigate this case in his *habeas* petition. Second, Petitioner has failed to either allege or prove that the alleged officer misconduct rendered his trial fundamentally unfair. It is clear from the record that the jury evaluated the testimony of the prosecution's witnesses and the testimony of Petitioner and resolved the overwhelming evidence in the prosecution's favor. Petitioner fails to articulate how the alleged officer misconduct would have altered the juror's calculus and ultimately their verdict. During *habeas corpus* review, this Court may not re-weigh the trial evidence or make credibility determinations of witnesses. This Court cannot grant *habeas* relief on wholly conclusory and unsupported allegations. Therefore, these grounds for relief are without merit and should be **DENIED**.

 I. <u>Claim Fifteen: Double Jeopardy</u>

In Petitioner's amended *habeas* petition, he argues that his convictions for aggravated burglary and possession of a firearm by a convicted felon constitute double jeopardy.  [doc. # 10, P. 5].  Specifically, Petitioner argues that "his conviction on the enhanced charge of burglary constitutes double jeopardy because it was based on the firearm charge.  Possession of a firearm was an element that the state had to prove in both charges." [doc. # 10, P. 6].   On direct review, the state appellate court found that "there was no double jeopardy violation in convicting defendant of aggravated burglary and possession of a firearm by a convicted felon."  *State v. Smith*, 7 So. 3d 855, 859 (La.App. 2 Cir. 2009).

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  Petitioner's claim arises under the third prong.  Punishment for the same offense is determined by "whether each provision requires proof of an additional fact which the other does not.  *Id.* at 166 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  To meet this test, the court must "compare the criminal statutes at issue and inquire whether each provision requires proof of an additional fact that the other does not." *United States v. Singleton*, 16 F.3d 1419, 1422 (5th Cir. 1994) (citing *Blockburger*, 284 U.S. at 304).[3]

Aggravated burglary is the unauthorized entering of any inhabited dwelling . . . with the intent to commit a felony or any theft therein, if the offender either (1) is armed with a dangerous

---

[3] Although the state appellate court analyzed Petitioner's claim under the "same evidence test," the Supreme Court has actually "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases.  *See U.S. v. Felix*, 503 U.S. 378 (1992) (citing *Grady v. Corbin*, 495 U.S. 508 (1990)).  Therefore, the undersigned's analysis will proceed solely under the *Blockburger* test.

weapon; or (2) after entering arms himself with a dangerous weapon; or (3) commits a battery upon any person while in such place, or in entering or leaving such place.  LSA-R.S. 14:60. LSA-R.S. 14:95.1 provides in pertinent part: "It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony . . . to possess a firearm or carry a concealed weapon."  Thus, to prove the crime of possession of a weapon by a convicted felon pursuant to LSA-R.S. 14:95.1, the state must prove that the defendant: (1) was convicted of a crime of violence as defined by LSA-R.S. 14:2(B) which is a felony, and (2) possessed a firearm or carried a concealed weapon.

The undersigned cannot find that the state court's application of the *Blockburger* test was an unreasonable application of clearly established federal law.  *See Smith*, 7 So. 3d at 859.  As the state appellate court found, the two offenses are "separate and distinct offenses."  *Id.*  The elements of the two offenses are not the same; "each requires proof of an additional fact which the other does not." *See Blockburger*, 284 U.S. at 304.  Therefore, Petitioner's convictions for possession of a firearm by a convicted felon and aggravated burglary do not implicate the Double Jeopardy Clause, and his claim on this basis should be **DENIED**.

J.    Claim Sixteen: Mistrial

Finally, Petitioner contends that the trial court erred in denying his motion for a mistrial after the incident in which a bailiff forcibly restrained him in the courtroom.  [doc. # 10, P. 8]. After reviewing the record, the state court found that "the trial court did not err in denying the defendant's motion for a mistrial based on the potential impact caused by the defendant's own disruptive behavior."  *Smith*, 7 So. 3d at 863.  The state appellate court summarized the facts surrounding the incident during Petitioner's trial:

The record shows that the defendant persistently engaged in disruptive behavior

23

during the trial. The defendant often attempted to argue with his attorney, and his interruptions and arguments included profanity: "No, man, no, no. Look, man, you fucking my case up, man . . .. You're fucking my case up, man. I ain't fixing to spend no rest of my life in jail . . .. Put the son-of-a-bitch (a letter from Ms. Coleman) in (evidence)." The record also reflects that the defendant was visibly crying during some of the testimony and at several other points during the proceedings.

The trial court cautioned the defendant about his behavior on more than one occasion and repeatedly warned him. The defendant continued to disrupt the proceedings, and early in the trial, the court had him briefly removed from the courtroom early. Later, the prosecutor informed the court that the defendant had apparently been trying to make contact with the jury, an allegation which the defendant denied, and the trial court warned the defendant to be quiet and not to talk to the jury.

The defendant's misbehavior continued when he took the witness stand. The record reflects that as the defendant moved to the witness stand, one of the bailiffs told the defendant "Don't be eyeballing that jury. You hear me?" After the conclusion of his direct testimony, the defendant became recalcitrant and refused to leave the witness stand:

Deputy: Come on.

Defendant: Man, I can't.

***

Defendant: You get those letters right there. (Defendant throwing letters at the jury.)

Please, y'all. Please, y'all. Here you go.

Please, read the letters. Please, somebody --

Deputy: I told you.

Defendant: (Unintelligible).

(DEPUTIES [RESTRAINING] DEFENDANT IN COURTROOM)

Deputy: Get back.

Defendant: Y'all, that's her address. That's her address.

That's her address. (Unintelligible). They don't want y'all to see that. Help me, please, y'all. They don't want y'all to see that. (Unintelligible). Please,

(unintelligible).

Please, don't hurt me. Please.

(DEFENDANT REMOVED FROM COURTROOM)

At that point, defense counsel moved for a mistrial. The trial court spoke with the bailiff and instructed the jury to disregard the disturbance. After the jury was removed from the courtroom, the court explained for the record:

> Court: The jury is out. The defendant is out. Let me put on the record that, with the jury out, that the defendant would not get out of the witness chair and then resisted the officer and there was a take down in the courtroom. And that's what's not on the verbal record.

> Prosecutor: Your Honor, I would also add for the record that he threw some sort of documents at the jury.

> Court: Threw some kind of document at the jury, so I told the jury to disregard it.

When the trial recommenced the next day, the court heard the defendant's motion for a mistrial. Defense counsel argued that the trial was a prejudicial environment for the defendant, citing the defendant's comments and the incident in which the deputies had to restrain the defendant. The trial court indicated that it did not observe the incident, but it called as a witness the deputy who restrained the defendant during the episode. The deputy stated:

> Well, I was there and he was here sitting in the witness stand  and y'all had, he had finished with him, the Judge had finished with him. I think y'all were going over for a sidebar or something and the Judge had his back to him. I walked up to him when he started this whining and crying, he was going to do that. I said, "Let's go," and he didn't respond and I said, "Let's go," he didn't respond, and so I grabbed him and helped him get up. That's when he got up from in here. We got around to there and he threw something over around me to the jury. At that particular time I didn't know what it was and I took him to the floor and the officers came in and we took him back out there, and I came back into the courtroom.

The deputy further stated:

> I looked at his body language. I watched his body language ever since we've had this thing going on. He's been aggravated, irritated, so on and so forth throughout this trial. He was the same way here and that was the reason that I was cautious and really watching him when he did. Most people get up and go on back when

25

they're relieved. He didn't do that. So I figured we was fixing to have a problem.

At the court's direction, the deputy explained for the record that the juror nearest the witness stand was within  three or four feet of the stand, and that he was only two feet away when the defendant was moving around the stand. The deputy stated that he was concentrating on controlling the defendant when he forced the defendant to the floor. Another deputy testified that the papers the defendant threw landed in the jury box and one of the jurors retrieved the documents and gave them to the deputy. After hearing arguments, the trial court overruled the defendant's motion for a mistrial. Defense counsel objected to the court's ruling.

The trial continued with the defendant undergoing cross-examination while seated at the defense counsel table. The trial court further required two bailiffs to remain near the defendant at all times. During cross-examination, the defendant attempted to engage in argument with the prosecutor and was resistant to providing direct answers to many questions. At the conclusion of his testimony, the defendant had another outburst directed toward the jury, repeating that the police "set this up." Once again, the court ordered that the defendant be removed from the courtroom. The defendant was later returned to the courtroom for further testimony but continued to be disruptive. During the rebuttal case, the prosecutor called Ms. Coleman to the stand, and the defendant became uncontrollable; he repeatedly told Ms. Coleman that he loved her and pleaded with her, "Don't do this." The court ordered the defendant to be quiet, saying "I don't want to take you out." However, the defendant again refused to comply with the court's direction. The court stated:

> Okay, let me just stop the proceedings. The defendant continues to interrupt the proceedings so that the jury is unable to hear the witness. I'm going to direct the guards to take Mr. Smith, the defendant, to the conference room where he can hear the proceedings but where his voice will not interrupt and disturb the proceedings, and that's the reason that I have repeatedly warned him that he's got to be quiet . . .. (To the deputies: Don't hurt him, but make sure he can hear the proceedings, please).

> (DEFENDANT REMOVED FROM THE COURTROOM).

The testimony concluded without the defendant being present in the courtroom. The defendant was returned to the courtroom for the closing arguments, the jury charge and the reading of the verdicts.

*Id.* at 860-62.

The trial court's denial of Petitioner's "motion for a mistrial justifies federal *habeas corpus* relief only if the 'error . . . [was] so extreme that it constitutes a denial of fundamental

fairness under the Due Process Clause.'" *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)).  Thus, to obtain relief, Petitioner must show that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict."  [He] must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict."  *Id* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623,(1993); *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996)) (citing *Sherman v. Scott*, 62 F.3d 136, 142 n.6 (5th Cir. 1995)).

In this case, Petitioner cannot show that the state appellate court's decision was an unreasonable application of clearly established federal law.  As the state appellate court found, the trial court made a "full and complete inquiry into the incident for the record, heard testimony from the bailiff and explained for the record the layout of the courtroom where the incident occurred."  *Smith*, 7 So. 3d. at 863.  Moreover, Petitioner cannot establish that the denial of the mistrial was an error at all, much less one "so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause."  This is particularly true, given that the alleged prejudicial impact was caused exclusively by Petitioner's own disruptive behavior throughout the course of the trial.  To afford Petitioner *habeas* relief, "based on his own conduct, is to give him a tool by which he can effectively prevent forever a final determination of his guilt. Such a result cannot be tolerated if our system of justice is to survive. *Id.* (citing *State v. Shank*, 448 So.2d 654, 657 (La. 1984)).  Accordingly, Petitioner's final claim should be **DENIED** as frivolous.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Earton

Smith [docs. # 1, 10] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 12th day of June, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE